The next case on the docket for this morning is Byron v. Brickman, No. 5-18-0208. Before we take up argument on this case, I want to say that the other member of this panel, Justice Overstreet, is not available. He is at a judicial conference and with those duties is not able to be here today. But he is a fully participating member of the panel and will hear the arguments online and be reading the briefs and will participate in the decision. So, you may... Oh, is there a... Could I approach the bench, Your Honor? Mr. Floyd gave me something to give to you, sir. Yes. In fact, he mentioned that to me and indicated that there was an agreement to divide time. And I will say that that's certainly allowable, but that's up to the parties to keep track of their time. And adjust accordingly. And so, if the appellant is ready to proceed, you may do so. Counsel, please record. Mr. Eric Carlson and myself, Bill T. Wilker, are honored to represent the Honorable Nicholas J. Byron, retired judge from the Third Judicial Circuit in this matter. Judge Byron gives his regrets he couldn't be here today. While he's mentally alert, he's physically incapacitated and couldn't be here. And he gives me great honor for Mr. Carlson and I to argue for Judge Byron. It comes down here in this case, we're arguing about a phrase that's been published in the paper, and that is, corrupt is a day as long. And it seems that the lower court and the defense argue that doesn't really have any meaning. If you go back to Genesis, to Matthew, to Shakespeare, to Francis Bacon, it does have meaning. Corrupt is a day as long, our position is, means you're corrupt totally to the core, you're corrupt all the time. It's a day as long as 24 hours. If you're corrupt as a day as long, you're corrupt. There's no good about you, it's bad. Period, that's it. It's not a stimuli comparing this day as long to corrupt. It's modifying and describing what you believe is that person is corrupt entirely, forever. We take a position, it really bothers us, and personally myself, I've been practicing 42 years in this district, and I find myself going to court these days and I see attorney's shorts with no ties, no coats, blue jeans, tennis shoes, and now we want to take on the court itself and argue that a judge is corrupt as a day as long. I guess it's modern time, I guess I'm just too old being 71 over the hill, and don't understand or appreciate the new vernacular of what's there. The test here is three parts. First, does the statement have a precise and readily understanding meaning to the average reader? And here we say yes. In the moral court, I asked the judge, I told him he was corrupt as a day as long, would that put a smile on his face? I'd ask the two justices here, if I went out and told people you're corrupt as a day as long, would that put a smile on your face? No, it wouldn't. You understand what corrupt as a day as long means, and the average reader understands what the corrupt as a day as long means. Meaning it's not positive, it's totally negative. Second question is, is it verifiable? And our position here has been from the beginning that it is verifiable. It's verifiable to this court, because any decision rendered by Judge Byron, when he was on the bench, has a possibility to come to this court, and to the next court, the Supreme Court of the state of Illinois. We have records, and unfortunately in Madison County it's all electronic these days. They took a lot of the old records and made them electronic, and if they're not electronic, they're in boxes, stored in boxes. You can go through and look at Judge Byron's caseload, and see if he was corrupt in any fashion, any manner. We have the JIV for that. If he was, people could turn him in. If you look at Webster's dictionary, the second definition of corrupt is bribery, giving favors, and it says the word judges. Webster even sees where corrupt, when you say a judge is corrupt, that's not good, that's bad. It's defamatory. No question about it. Third test is, whether the statement has a literary or social context that signals that it has factual content. Here it's very simple. The factual content is, they say he's corrupt. It's a day in the law. If this court, I believe, says this is not defamatory, that I can go out tomorrow and have signs up, I can go out and do interviews with TV, the press, and say that every judge in this building is corrupt for a day in the law. It gives me a license to say that with no proof whatsoever. It's just undignified, it's improper. Would that be an opinion, though? Sir? Wouldn't that be an opinion? No, sir. Wouldn't it be an opinion if you went out and said the blanket statement that every attorney or every judge in this building is corrupt? No, sir, because I'm saying it's… With no other context? Saying corrupt is corrupt. That means that if you've taken rides in your sidewalk… I don't understand what the word means. I'm saying, isn't that someone's opinion without more to it? No, sir. There's more to it because you've been identified with this news article that you're an expert. You're a law professor at Cardoza Law School in New York. People look up to you thinking what you're saying is based on your intelligence, your ability to know things. At the same time, to read the whole article in context, they're trying to insinuate that he's taking money from plaintiff's lawyers because he has an asbestos docket. And I'm saying this. Even if it was your opinion, if it's defamatory, you're not covered by a free speech statement. So you're suggesting that because he was a professor and highly regarded, that highly regarded people aren't entitled to voice an opinion? No, sir. What I'm saying is that if they do voice it, it's automatically considered fact? If you're taking in context of this specific situation, that I hear what you're saying. That's not what I'm saying. What I'm saying here, if I go out to say that a judge who's a public figure is corrupt as the day goes along, unless I have proof that he is corrupt, that he's on the take, that he's taken bribes, that he's done something illegal, then it's defamatory. Period. That's it. I don't care if it's my opinion, your opinion, whose opinion it is. I don't think it rises to that level per se. And you can't do it. If you could do that, and I'll give you a good example.  He was a state's attorney. He was an associate judge and a circuit judge. He spent his whole professional life serving the public, including to his country in the military. Doesn't deserve the comment, unless you have proof, that he's corrupt. People read this, they're assuming he's corrupt. And it's not just him, it's you, Judge Barberis, or anybody else that's in the system, because once corrupt, they're all corrupt. That's why we have something here to say, wait a minute, you have to go online. You got proof? Then prove it on something like this. You don't have proof. You don't have the text from the Constitution to go out and say something like that. And I don't mind, pardon me for getting emotional, but it really bothers me what this country's gotten to, and we can go out and say things like that with nothing to back it up whatsoever. It's uncalled for is what it's for. And there's a line you have to draw on the sand,  so you have to have the proof, in my opinion. If I'm going to say Justice Moore is corrupt, I better have the proof for it. I can say what I want to say and give my own opinion, but there's consequences for what I say. And I can't just flip it off this. The thing today is everybody wants to do fake news, okay? This isn't fake news. This is taking the challenging integrity of a justice that's sitting on the bench. Another thing, this is done, what, six, seven, eight years after he's off the bench. What's the purpose of that as far as putting in the paper and doing something like this? Going by, I guess, trying to be historical? Well, if you're historical, now into the thing I get into all the time, oh, we're in white history. If no proof he was corrupt, no J.I.B. inquiries, nothing to the ARDC, nothing from the appellate court here, nothing from the Supreme Court of Illinois, yet he's corrupt. Counsel, don't you have to look to the context of the article as to the meaning? Look to the whole context, I believe, Your Honor. And I think this article, when you see it, it's a hatchet job. That's all I can say, it's a hatchet job. Because what they do is they talk to a defense counsel and they talk to Chamber of Commerce people, the fronts for them, and that's it. They don't talk, they don't ask the environment for a comment. They don't ask any plaintiff or members that are there. A good example, Justice Moore, the underlying law court said this. They characterized this whole thing as a heated debate. I debated in high school and college. I remember being at the University of South Carolina debating against them. And the debate was heavy. I argued, you argued back and forth. That's a heated debate. This article, when you take it in context, it's not a heated debate. It's a one-side hatchet job is all it is. It doesn't take both sides. It's not a debate, much less a heated debate on something like this. And when you take the context and read the whole article, it's phrased for his contributions, it's phrased for everything else in the world to do to try to imply. And my thing is real simple. If anything is true that he was corrupt, that he took bribes, or did anything illegal, then I'm corrupt. But they can't prove that and can't show it because it isn't there. And so way past the line, this is defamatory. Period. It's divorce. What Judge Barron, as a lawyer in the community and on the bench, attacking his integrity, attacking his ability. Yes, sir. As much as I would like to, as much as I support your position of public officials not just being open to all sorts of attacks, I still don't see how this is not covered by First Amendment. I mean, it's a person's opinion. There's a context in the article. How is this not First Amendment protected? It's not First Amendment protected because it's defamatory. There's no truth to this. If you have an opinion, as I said before, you'd better be able to back it up. I can't go around saying that you're an adulterer if you cheat on your wife. Period. I can't do that unless I can prove it. I can't go around calling your wife nasty names at the bank when I see her making a deposit unless I can prove something like that. There's a line you cross. Just because you're a public official doesn't give somebody the ability to come out and say whatever they want to say about you and put it in a context that says, in my opinion, that Jekyll and Hyde is corrupt. You can't do that unless I have proof or something like that. This here is not protected by the First Amendment. Will you argue and agree with that? And to this day, until the day I pass away, I'm going to argue that you can criticize. Constructively, you can criticize. But when you say something like this that had one interpretation, highly negative, and they said there's no—I haven't found yet where I can find something that has been corrupt as being a positive thing. I've based it on my English grammar of nature, trying to find it and go back and go back to the roots of this and where it starts. What's interesting, this phrase came from this. The original phrase was, honest as the day is long. That's what the originality of this whole thing is. And somebody came along and added the word corrupt to it. Changed from honest to corrupt. Right there in itself shows what the position is. And I disagree with you, Judge Rivera. This is not a First Amendment-protected speech, even though you have a public official, which I can see, sitting on the bench. Because when you mention the corruptness and say it about him, you've gone over the line. You don't have the protection to shield that. Well, if you come back to it, if you can show me that I'm wrong and he was corrupt, he did take a bribe or did do something dishonest, isn't that a good thing? And the definition of truth is this. And there's no truth in this whole situation. So just because you want to put the flag up like somebody does for the First Amendment, it doesn't cover everything. It's not absolute. People try to make it absolute. It's first and foremost, I say what I'm going to say. There's consequences for what you say. And they have way crossed the line on this thing, saying that he's corrupt as the day is long. Any other questions from the justices? Well, I do have some questions about some of the specific cases. Yes, sir. Coughlin against Beck and Imperial Apparel. Yes, sir. We have the terms corrupt director, bully tactics, fraud machine, were found to not have a precise and readily understood meaning. Troy Group against Tilson. One of the parties, the plaintiff was characterized as one of the biggest crooks on the planet, was not actionable, was exaggerated figurative and hyperbolic speech. And those are just examples. How do those cases not apply in this situation? It's just like you said, Justice, more earlier. You have to take the context of what it's presented as and how it is. In this case, the article is attacking the docket within the opinion of the court. This judge is a presider of that. They're saying what happened or what the results are are because he was corrupt. He took bribes or he did something illegal. In those cases you mentioned, specifically the Jewish clothing store case that you mentioned there, they're not mentioning people by name. It's more ads going back and forth. They're not specifically attacking a person or what their duties were or what their honor is in serving the people. None of that. You're talking about something's apples and oranges on something like that on each one of those cases. Here it's very clear. If I say Justice Moore is corrupt or corrupt as the day is long and go out and say that, the ordinary average person is going to have their thoughts that you're on the take or you're doing something illegal, period. It's not a question that I'm in competition with this lady here and the idea of selling clothes or doing dry clean or something like that. It's specific to your duties and to your honor and to your integrity. It's just like here. People don't understand. Judge Byron went to John Hopkins and went to Wash U, two good schools. He's honorable. Served this country. Served our community. The 3rd District served it for his lifetime as far as professionalism. And here he is 89 years old and they're trying to trash him, hatchet him. That's what they're trying to do. So it's my position that those cases, I understand each one of those. I've read each one of those. This case is entirely different because they're naming the person, the person sitting on the bench at the time. If you read their briefs, that's what the focus time is on something like this. And it's attacking him personally and direct. Not hyperbole, not somebody putting something up there, a test balloon or somebody advertising it trying to get to somebody else. And that's what I believe is 100% in this case. Hope that answers your question, your honor. Thank you. Yes, sir. Thank you, your honor. Do I have an opportunity for a rebuttal? Yes, sir. Counsel for affidavit. Good morning, your honor. Stephen Flum on behalf of Heather Isringhausen-Gavillo and the Madison County Record Inc. Our motion to dismiss the complaint provided four separate and independent reasons why the quote in the newspaper article on which the plaintiff bases this lawsuit is not actionable as a matter of law. The circuit court ruled on the basis of one of those four grounds, namely that the quote was protected by the First Amendment and it was therefore unnecessary for the circuit court to address any of the three remaining grounds, namely the innocent construction rule, the neutral reportage privilege, or the fact that the plaintiff failed to allege facts establishing actual analysis. Although I'm here this morning to answer any questions that the court may have on any of the four grounds that justify the dismissal of the complaint with prejudice, in the ten minutes or so allotted to me, I intend to focus on two of the grounds, the First Amendment and the innocent construction rule. So with respect to the First Amendment, the... How can you make an innocent construction rule corrupt? Because you have to put it in context. It's exactly what you said, Your Honor, earlier, that you have to view the statement in context. That's what the Tuan v. Corbett case stands for. And I would note at the outset that with respect to the innocent construction rule, that the plaintiff has not even addressed it, did not address it in either of their briefs, did not address it this morning. So for starters, they've effectively forfeited any ability to challenge it. But even if the innocent construction rule was something that they could attempt to rebut, it is, there is a reasonable non-defamatory interpretation. And that's all that matters. It doesn't matter whether there might be or there isn't, and I'll get to that in the First Amendment issue since we're not going to talk about innocent construction rule first. Although there isn't a reasonable defamatory interpretation, all that matters for purposes of the innocent construction rule is that there is a reasonable non-defamatory interpretation. In the Middleman v. Wittes case, the Illinois Supreme Court taught us that you don't balance reasonable and defamatory versus reasonable non-defamatory interpretations. If there's a reasonable non-defamatory interpretation, it's game over. It's not action. So as Justice Morris, you suggested earlier, context is absolutely key. So what is the context in this article in which the statement appears in which the plaintiff based their lawsuit on that one sentence in the article? Well, it's an article that talks about the rise of Madison County as a focus of popular forum for asbestos cases. The plaintiff, of course, doesn't suggest that that's not true, let alone defamatory. The article mentions that the plaintiff had friendly, plaintiff-friendly, excuse me, Judge Byron had plaintiff-friendly scheduling practices in his asbestos cases. The article asserted that the plaintiff had scheduling practices of scheduling multiple cases involving the same defendant for trial on the same day, and that effectively forced defendants to settle. It was characterized as that was beating the defendants into submission in that fashion. It was asserted that he was pro-plaintiff and that he accommodated the plaintiff's counsel in virtually every conceivable way. That's the context. And the plaintiff in this lawsuit does not suggest that any of that was defamatory or even inaccurate. That's not action. So with that context, when the court goes on to say, and it uses the crucial word added, Professor Brickman added, it clearly was tying it to what went before, and the quote could reasonably be interpreted to mean that the plaintiff had, no, Judge Byron had plaintiff-friendly tendencies. There's nothing defamatory about a judge having plaintiff-friendly tendencies. So even if the quote could reasonably be construed to have a defamatory meaning, as I'm about to suggest, it can't. But even if it could, the innocent construction rule bars the cause of action. So with respect to the First Amendment, which is a separate and independent ground for affirming the dismissal of a complaint with prejudice, the Supreme Court's opinion in apparel teaches that whether the statement is protected by the First Amendment is a question of law for the court. And this particular quote constitutes both of the two forms of speech that the First Amendment protects, as the U.S. Supreme Court decision in the Milkovich case explains. Those two forms of protected speech are, first of all, speech that cannot be interpreted as stating actual facts, actual facts, and second, that the speech is not provable as false. So the Illinois Supreme Court in imperial apparel has given us three factors that we look to to decide, to guide the determination, whether the speech is protected by the First Amendment. And here, all three of those factors support the determination that this is indeed protected speech. The first is that the quote does not have a precise and readily understood meaning. Obviously, the question is not whether saying that someone is corrupt is a day as long. It's not a compliment. And the question is not, as counsel suggests, whether it's criticism. Of course, it's critical, but what does it really mean? It's pure opinion, as Justice Barbera suggested. That's all that it means, and it's not tied to a precise meaning. Even the plaintiff can decide, what does it really mean? What is it accusing Judge Byron of doing, of being? The complaint simply alleged that the quote implied, not that it stated, but that it implied that Judge Byron violated a one-way list of provisions in the Code of Judicial Conduct and also in the Rules of Professional Conduct. Well, that's clearly wrong. The article doesn't even say anything about the Code of Judicial Conduct or the Rules of Professional Conduct. It doesn't say anything about ethical rules. It doesn't say anything at all about Judge Byron's conduct as a lawyer. So it would require what this Court aptly termed a quantum leap of speculation and innuendo to conclude that the quote was accusing Judge Byron of having violated the Code of Judicial Conduct or the Rules of Professional Conduct. I love that phrase, quantum leap of speculation and innuendo, and it really captures the essence of what the plaintiff is trying to do here. But as if to underscore that the quote is not susceptible of a single precise and readily understood meaning, the plaintiff, in its brief, goes on to offer additional potential interpretations, and those alternative interpretations are non-starters. Why? They're not alleged. They're not in the complaint. The plaintiff is limited to the allegations of the complaint. They've never proffered an amended complaint. They didn't challenge in the notice of appeal the failure to be given leave to provide an amended complaint. In the briefs in this Court, they don't suggest they should have been given leave to file an amended complaint. So they're limited to the allegations and the complaint, and that's these alleged ethical violations. So they've forfeited any potential arguments about other interpretations. But even if those arguments were properly raised, they would still fail, because what they really do, the fact that the plaintiff himself can't settle on a single precise meaning, those alternative interpretations underscore the fact that this language is not capable of a precise meaning. So the plaintiff's brief mentions a dictionary definition with four different interpretations of the word corrupt, and they don't even say in the brief which of the four they think was meant in the quote. The brief references the statutory provision for bribery. Corruption is not synonymous with bribery. That's not the sole meaning of corruption, and that's the question here. Is it precise? And it's not. Elsewhere in the brief, the plaintiff argues that the quote imputes that he lacks integrity in performing his duties, or that he misused his office, whatever that means. So all of these different meanings really just demonstrate that the quote is protected by the First Amendment because it's just opinion. It's not capable of precise meaning. And the Circuit Court correctly determined that that was the case. The Circuit Court also correctly determined, with respect to a second factor from imperial apparel, bearing on protection by the First Amendment, the Circuit Court correctly determined that the quote has loose and figurative language. And I don't want to take too much of Mr. Mandel's time, but let me simply state that corrupt, as the day is long, is a simile, it's rhetorical hyperbole, it's what this Court suggested in the MAD case, is simply that rhetorical hyperbole, suggesting in that case that a judge was soft on crime. It's certainly not a compliment, but it's not actionable. It's loose and figurative language, the same is true of corrupt as the day is long. And so again, not wanting to intrude on Mr. Mandel's time, I would ask the Court on any of the four grounds, but certainly the two that I've mentioned, innocence, construction, rule, and First Amendment, to affirm the dismissal of the complaint. Thank you, counsel.  Good morning, Your Honors. Steve Mandel on behalf of Professor Brickman. I'd like to reserve a minute of time, I'm also a cross-appellant on the jurisdictional issue. I'd like to maybe respectfully try and clear up what I perceive to be some confusion on the part of the appellant, and that is, he confuses whether something is positive or negative versus whether it states fact or opinion. I don't really dispute the fact that saying that someone is corrupt as the day is long is not a compliment and not positive. The problem is, it is a classic case of name-calling, hyperbole, and it's opinion. You can read a hundred defamation opinions in Illinois law, and they all sort of track the same formula. They look at whether a statement is defamatory, does it fall into one of the per se categories. They look at whether it's subject to an innocent construction. They look at whether some privilege applies. And then they get to opinion, and they say, even if a statement is defamatory, it can still be protected and non-actionable under the First Amendment. So the law takes into account that statements can be negative and even defamatory, but still protected. And that's what I think is being overlooked, is that the First Amendment really gives us breathing space for name-calling, for uncomplimentary speech. Especially, we're dealing with core political speech here, right, because we're dealing with an elected official. And the law gives even greater, the highest level of protection in that context. And we may decry, like what goes on in our political campaigns where Governor Rauner is calling candidate Pritzker corrupt, and the same thing is going back and forth, but that's what our system is designed to do, to foster that kind of debate. And I can write a column and maybe not talk to the other side directly, but it is debate, and it is protected. And if we start circumscribing that, we start chilling speech, right? We may not like name-calling, but once you stop name-calling, it has a chilling effect and it's a slippery slope. So we have to protect that. In these fact versus opinion dichotomy cases, context is everything. And let me give you an example. If we take the statement in isolation, he's as corrupt as the day is long, I think the cases that Your Honor pointed out, Coughlin, Brennan versus Kadner, Hopewell, Rose, we cite them in all our briefs. They say, that's name-calling, it's non-verifiable, can you prove that something is corrupt as the day is long? It's imprecise, and so it's protected. Versus the other situation where you say, he's corrupt, I saw him take money in exchange for a favor. Now, I still believe that in the context of the whole article here, it's opinion. But in that example, you're getting more towards a factual predicate for the statement, and then it becomes less name-calling and perhaps more factual. Why do I focus on this? Because there's a distinction in this case that makes Professor Britman's situation a little bit different than the media defendant's. And that is, if you look at the record in this case and you compare the September 2014 article, which is at record site 78, with an earlier March 2014 article in a different publication, an online publication called Legal News Online, you'll see, and that's at 282 record site, you'll see that the reporter here actually recycled the quote, he's corrupt as the day is long, from an earlier article. And so why is that significant? Because really, that's the quote, and the only quote that is attributed to Professor Britman. And so if you're going to look at things in context... Exactly, Your Honor, and if you look at Professor Britman's affidavit, which is uncontradicted, he had the phone call in March, and that's when the article came out in an online publication. He had no involvement or even no knowledge about the later publication in September of 2014, which this suit is based on. But my point here is that when you look at the context, the context of Professor Britman's statement is just that statement. If you compare the two articles, all the other information material surrounding that quote is provided by the media defendants. So it's a little bit of a different analysis. Is there a distinction to be made, for example, if Britman had said, in my opinion, Judge Byron is in fact corrupt, as opposed to saying the fact is Judge Byron is corrupt? Is there a distinction there? There is. It's complicated, though, because the law teaches us that we have to look at certain literary signals. That's the literary context. And although people can't insulate what they say by saying, in my opinion, Judge Byron is corrupt, by the same token, that is a factor to be taken into account. The question really is, is there a factual predicate or facts that the speaker provides that signals to the reader that this is a factual assertion rather than just hyperbole or name calling? So real quick, there are two other bases here. Jurisdiction, it cannot be the case that you receive a phone call in New York and talk about someone in another state and are thereby subject to jurisdiction in that other state. I think the trial judge was with us all the way, except he relied on these other articles that were submitted. And the other articles were hearsay and they were non-suit related, and they were even in the same time period. And I think all the cases are clear that that's not sufficient. And then finally, the statute of limitations argument. This statement was published in March, more than a year before the suit was filed. And so the suit ought to be time barred. Thank you. We'll have an opportunity for. We won't have an opportunity. Oh, yes, you will, because it's possible. It's a little bit strange because they didn't respond in their in their briefs on appeal to either the jurisdictional argument or the statute of limitations argument. So I will be arguing that they can't argue it here. But if they do argue it here, then I will. But thank you. Sorry for that confusion. Yes. Sometimes it's hard to keep all the parties straight. Yes, sir. Yes, sir. Thank you. You know, we heard the innocent construction rule here applies because corrupt can be interpreted as he was. We have to use our own judgment, our own senses. Saying that a justice or a judge is pro plaintiff friendly or pro defendant friendly or anti-crime or for the defendant in criminal cases, that's not the same as saying he's corrupt. That's not that's not even the same universe, much less the same playing field to say that this is name calling. There's a big difference between name calling and asserting that somebody is corrupting it. I keep going back to that word. That's a word that was used. Also, we attached the article to our complaint and made it part of our complaint. If you read the article, Professor Griebman is is not it's not the only thing he says in that article. If you look in the context, you look at the whole article and see what else he said in the article. Corrupt as the day is long is fact. It's not opinion here. He's saying that the judge is corrupt. And you prove where he's corrupt. That's their defense in a defamation case. If they prove he's corrupt, like I said to Judge Barberis earlier, that's a lose. That's it. They can't do it because there's no truth to it. And that's a fact that they're asserting that Judge Byron is corrupt while he was on the bench. They complain about the way that the complaint was drafted. If you read the complaint in its whole context again, we're saying the accusing a judge of being corrupt on the bench. He's in violation of all these rules under the J.I.D. and he's in violation of all these rules because he has a law license under the A.R.D.C. We're not specifically saying this or that. It's their defense to prove it's true that he's corrupt. We're saying he's not corrupt. The burden shifts to them to prove that we have evidence. This is an attorney who says he paid him off or this is he did him a favor or bought an airplane or whatever the concept is. You cannot hide behind, Judge Barberis asked this earlier, it was mentioned just a while ago, the courts are really clear on this, Supreme Court of the United States, you can't hide behind and say it's my opinion if it's defamatory. If it's defamatory, it's defamatory. Period. And it's our position to say without any question it's not pure opinion, it's not opinion in any way, he states a fact. He says Judge Byron, Nicholas Byron, Judge Nicholas Byron is corrupt as the day is long. That's a fact he's standing on and states on. We're ready to go to trial. We ask this court to send the case back to Madison County with the emphasis we have a person that's well over the statutory age requirement to get ahead of the line. We've got an individual that gave service to his country and to this district and we ask that this case be set sooner than later for trial and let 12 people in Madison County make a decision what they think about calling a setting judge at that time corrupt as the day is long when he's doing his duties and you're challenging his integrity. Thank you. Thank you, Counsel. We're going to cross it down. On the jurisdictional argument, obviously, that becomes pertinent to Professor Brickman only if there's a reversal in the opinion decision. Right. Because that's a decision on the merits. I would note that, again, there's been no argument from Judge Byron on either the jurisdictional argument or the statute of limitations. So I think in the record, the record supports the statute of limitations supports the firmness even if the court were to have issues with the opinion argument. If the court reverses the judgment, then I would argue that the exercise of specific jurisdiction here would be improper. The trial judge agreed there was no general jurisdiction. He said there would be no specific jurisdiction if it were just that phone call. But he looked to these other articles that mentioned Professor Brickman's name, even though they didn't necessarily indicate any connection to Illinois. So, for example, one article talked about his book. Another article talked about his testimony before Congress. That's not submission to jurisdiction. Thank you, Counsel. The Court will take the matter under advisement and issue a decision in due course.